# Exhibit 10

May 29, 2020  Executive Order 2020-38

**EXECUTIVE ORDER 2020-38
(COVID-19 EXECUTIVE ORDER NO. 36)**

**Restoring Illinois – Protecting Our Communities**

**WHEREAS**, since early March 2020, Illinois has been faced with a disaster caused by a pandemic that has taken the lives of thousands of residents, infecting over 100,000 and growing, and resulting in extraordinary sickness and loss of life; and,

**WHEREAS**, at all times but especially during a public health crisis, protecting the health and safety of Illinoisans is among the most important functions of State government; and,

**WHEREAS,** as Illinois enters the fourth month of responding to the public health disaster caused by Coronavirus Disease 2019 (COVID-19), a novel severe acute respiratory illness that has spread and continues to spread rapidly among people through respiratory transmissions and continues to be without an effective treatment or vaccine, the burden on residents, healthcare providers, first responders and governments throughout the State is unprecedented; and,

**WHEREAS,** the World Health Organization declared COVID-19 a Public Health Emergency of International Concern on January 30, 2020, and the United States Secretary of Health and Human Services declared that COVID-19 presents a public health emergency on January 27, 2020; and,

**WHEREAS**, on March 11, 2020, the World Health Organization characterized the COVID-19 outbreak as a pandemic, and has now reported more than 5.5 million confirmed cases of COVID-19 and 350,000 deaths attributable to COVID-19 globally; and,

1

SHC-TJBC, Inc. v. Cincinnati-Complaint Exhibits--000374

**WHEREAS**, despite efforts to contain COVID-19, the World Health Organization and the federal Centers for Disease Control and Prevention (CDC) indicated that the virus was expected to continue spreading and it has, in fact, continued to spread rapidly, resulting in the need for federal and State governments to take significant steps; and,

**WHEREAS**, on March 9, 2020, I, JB Pritzker, Governor of Illinois, declared all counties in the State of Illinois as a disaster area in response to the outbreak of COVID-19; and,

**WHEREAS**, on March 13, 2020, the President declared a nationwide emergency pursuant to Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. 5121-5207 (the "Stafford Act"), covering all states and territories, including Illinois; and,

**WHEREAS**, on March 26, 2020, the President declared a major disaster in Illinois pursuant to Section 401 of the Stafford Act; and,

**WHEREAS**, on April 1, 2020, due to the exponential spread of COVID-19 in Illinois, I again declared all counties in the State of Illinois as a disaster area; and,

**WHEREAS**, on April 30, 2020, due to the continued spread of COVID-19 in Illinois, the threatened shortages of hospital beds, emergency room capacity, and ventilators, and the inadequate testing capacity, I again declared all counties in the State of Illinois as a disaster area; and,

**WHEREAS**, on May 29, 2020, due to the thousands of lives lost to COVID-19 in Illinois, the continued increase of cases, the continued threat of shortages of hospital beds, emergency room capacity, and ventilators, the improved but still insufficient testing capacity, and the financial destruction caused by the virus, I again declared all counties in the State of Illinois as a disaster area; and,

**WHEREAS**, the CDC advises that limiting face-to-face contact with others is the best way to reduce the spread of COVID-19, and that social distancing – staying at least 6 feet away from other people, not gathering in groups, and staying out of crowded places – is among the best tools to slow the spread of the virus; and,

**WHEREAS**, the CDC recommends wearing cloth face coverings in public settings where social distancing measures are difficult to maintain; and,

**WHEREAS**, the CDC recommends other critical precautions to slow the spread of COVID-19, such as frequent hand washing, covering coughs and sneezes, and cleaning and disinfecting frequently touched surfaces; and,

**WHEREAS**, there have been over 117,000 confirmed cases of COVID-19 in 101 Illinois counties; and,

**WHEREAS**, Illinois has had more than 5,200 deaths resulting from COVID-19, and many days more than 100 Illinoisans lose their lives to the virus; and,

SHC-TJBC, Inc. v. Cincinnati-Complaint Exhibits--000375

**WHEREAS**, although the number of new COVID-19 cases has stabilized and potentially begun to decrease in recent weeks, the virus continues to infect thousands of individuals and claim the lives of too many Illinoisans each day; and,

**WHEREAS**, COVID-19 has claimed the lives of and continues to impact the health of Black and Hispanic Illinoisans at a disproportionately high rate – magnifying significant health disparities and inequities; and,

**WHEREAS,** as the virus has progressed through Illinois, the crisis facing the State continues to develop and requires an evolving response to ensure hospitals, health care professionals and first responders are able to meet the health care needs of all Illinoisans and in a manner consistent with CDC guidance that continues to be updated; and,

**WHEREAS**, while hospitalizations have very recently stabilized, Illinois is using a significant percentage of hospital beds, ICU beds, and ventilators to treat COVID-19 patients that require hospitalization and, if cases were to surge higher, the State could face a shortage of one or more of these critical health care resources; and,

**WHEREAS**, the State worked with top researchers from the University of Illinois at Urbana-Champaign, the Northwestern School of Medicine, the University of Chicago, the Chicago and Illinois Departments of Public Health, along with McKinsey and Mier Consulting Group, and Civis Analytics, to analyze data on COVID-19 deaths and ICU usage and model potential outcomes; and,

**WHEREAS**, the State's modeling showed that its health care resource utilization would peak in May, and that health care resources would continue to be limited after the peak, updated modeling now shows that the peak may have been delayed, with the tail extending several more weeks; and,

**WHEREAS**, the State's modeling continues to show that without extensive social distancing and other precautions, the State will face a shortage of hospital beds, ICU beds and/or ventilators; and,

**WHEREAS**, in addition to causing the tragic loss of more than 5,200 Illinoisans and wreaking havoc on the physical health of tens of thousands more, COVID-19 has caused extensive economic loss and continues to threaten the financial welfare of a significant number of individuals and businesses across the nation and the State; and,

**WHEREAS**, nationwide, 40 million people have filed unemployment claims since the start of the pandemic – representing one in four U.S. workers; and,

**WHEREAS**, the Illinois Department of Employment Security announced that the State's unemployment rate rose to 16.4% in April, with 762,000 jobs lost during that month; and,

**WHEREAS**, over 180,000 small businesses in Illinois have received over $22 billion in COVID-19 related financial support through the federal Paycheck Protection Program in an effort to prevent these businesses from closing; and,

SHC-TJBC, Inc. v. Cincinnati-Complaint Exhibits--000376

**WHEREAS**, the economic loss and insecurity caused by COVID-19 threatens the viability of business and the access to housing, medical care, food, and other critical resources that impact the health and safety of residents; and,

**THEREFORE**, by the powers vested in me as the Governor of the State of Illinois, pursuant to the Illinois Constitution and Sections 7(1), 7(2), 7(3), 7(8), 7(9), and 7(12) of the Illinois Emergency Management Agency Act, 20 ILCS 3305, and consistent with the powers in public health laws, I hereby order the following, effective immediately:

**Restoring Illinois – Protecting Our Communities**

1. **Intent of this Executive Order**. The intent of this Executive Order is to safely and conscientiously resume activities that were paused as COVID-19 cases rose exponentially and threatened to overwhelm our healthcare system. As Illinoisans resume these activities, we must not backslide on the progress we have made. We cannot risk overwhelming our healthcare system, and we must prioritize the health and lives of all Illinoisans, especially the most vulnerable among us. While protecting our communities, we will restore our economy and begin to repair the economic damage that the virus has caused. The intent of this Executive Order is to effectuate those goals.

   This Executive Order supersedes Executive Order 2020-32 and Section 1 of Executive Order 2020-07.

2. **Public health requirements for individuals.** Individuals must take the following public health steps to protect their own and their neighbors' health and lives:

   a. **Practice social distancing.** To the extent individuals are using shared spaces when outside their residence, including when outdoors, they must at all times and as much as reasonably possible maintain social distancing of at least six feet from any other person who does not live with them.

   b. **Wear a face covering in public places or when working**.[1] Any individual who is over age two and able to medically tolerate a face covering (a mask or cloth face covering) shall be required to cover their nose and mouth with a face covering when in a public place and unable to maintain a six-foot social distance. This requirement applies whether in an indoor space, such as a store, or in a public outdoor space where maintaining a six-foot social distance is not always possible.

---

[1] Throughout this Executive Order, any reference to a face covering requirement excludes those two years old and younger and those for whom wearing a face covering is not medically advisable. Guidance on use of face coverings from the Illinois Department of Human Rights is available here:
https://www2.illinois.gov/dhr/Documents/IDHR_FAQ_for_Businesses_Concerning_Use_of_Face-Coverings_During_COVID-19_Ver_2020511b%20copy.pdf

4

SHC-TJBC, Inc. v. Cincinnati-Complaint Exhibits--000377

c. **Elderly people and those who are vulnerable as a result of illness should take additional precautions.** People at high risk of severe illness from COVID-19, including elderly people and those with a health condition that may make them vulnerable, are urged to stay in their residence and minimize in-person contact with others to the extent possible.

d. **Limit gatherings**. Any gathering of more than ten people is prohibited unless exempted by this Executive Order. Nothing in this Executive Order prohibits the gathering of members of a household or residence. Because in-person contact presents the greatest risk of transmission of COVID-19, Illinoisans are encouraged to continue limiting in-person contact with others and to expand their social contact cautiously. Gathering remotely continues to be the safest way to interact with those outside a household or residence.

e. **Go outdoors**. Public health guidance suggests that the risks of transmission of COVID-19 are greatly reduced outdoors as opposed to indoors. Where possible, Illinoisans are encouraged to conduct their activities outdoors.

3. **Public health requirements for businesses, nonprofits, and other organizations.** For the purposes of this Executive Order, covered businesses include any for-profit, non-profit, or educational entity, regardless of the nature of the service, the function it performs, or its corporate or entity structure. Those entities must take the following public health measures to protect their employees, their customers, and all others who come into physical contact with their operations:

    a. **Requirements for all businesses.** All businesses must:
        - continue to evaluate which employees are able to work from home, and are encouraged to facilitate remote work from home when possible;
        - ensure that employees practice social distancing and wear face coverings when social distancing is not always possible;
        - ensure that all spaces where employees may gather, including locker rooms and lunchrooms, allow for social distancing; and
        - ensure that all visitors (customers, vendors, etc.) to the workplace can practice social distancing; but if maintaining a six-foot social distance will not be possible at all times, encourage visitors to wear face coverings; and
        - prominently post the guidance from the Illinois Department of Public Health (IDPH) and Office of the Illinois Attorney General regarding workplace safety during the COVID-19 emergency.[2]

---

[2] This guidance is available at: https://www.dph.illinois.gov/sites/default/files/COVID-19_WorkplaceHealth_SafetyGuidance20200505.pdf

SHC-TJBC, Inc. v. Cincinnati-Complaint Exhibits--000378

The Department of Commerce and Economic Opportunity (DCEO), in partnership with IDPH, has developed industry-specific guidance and toolkits to help businesses operate safely and responsibly. These documents are available at: https://www2.illinois.gov/dceo/Pages/RestoreILP3.aspx.

b. **Requirements for retail stores.** Retail stores must ensure all employees practice social distancing and must take appropriate additional public health precautions, in accordance with DCEO guidance, which include:
   - provide face coverings to all employees who are not able to maintain a minimum six-foot social distance from customers and other employees at all times;
   - cap occupancy at 50 percent of store capacity, or, alternatively, at the occupancy limits based on store square footage set by the Department of Commerce and Economic Opportunity;
   - communicate with customers through in-store signage, and public service announcements and advertisements, about the social distancing and face covering requirements set forth in this Order; and
   - discontinue use of reusable bags.

c. **Requirements for manufacturers.** Manufacturers must ensure all employees practice social distancing and must take appropriate additional public health precautions, in accordance with DCEO guidance, which include:
   - provide face coverings to all employees who are not able to maintain a minimum six-foot social distance at all times;
   - ensure that all spaces where employees may gather, including locker rooms and lunchrooms, allow for social distancing; and
   - modify and downsize operations (staggering shifts, reducing line speeds, operating only essential lines, while shutting down non-essential lines) to the extent necessary to allow for social distancing and to provide a safe workplace in response to the COVID-19 emergency.

d. **Requirements for office buildings.** Employers in office buildings must ensure all employees practice social distancing and must take appropriate additional public health precautions, in accordance with DCEO guidance, which may include:
   - provide face coverings to all employees who are not able to maintain a minimum six-foot social distance at all times;
   - consider implementing capacity limits where the physical space does not allow for social distancing;
   - allow telework where possible; and
   - develop and prominently post plans and signage to ensure social distancing in shared spaces such as waiting rooms, service counters, and cafeterias.

SHC-TJBC, Inc. v. Cincinnati-Complaint Exhibits--000379

e. **Requirements for restaurants and bars.** All businesses that offer food or beverages for on-premises consumption—including restaurants, bars, grocery stores, and food halls—must suspend service for and may not permit on-premises consumption, except as permitted by DCEO guidance. Such businesses are permitted and encouraged to serve food and beverages so that they may be consumed off-premises, as permitted by law, through means such as in-house delivery, third-party delivery, drive-through, and curbside pick-up. In addition, customers may enter the premises to purchase food or beverages for carry-out. However, establishments offering food or beverages for carry-out, including food trucks, must ensure that they have an environment where patrons maintain adequate social distancing.

    Bars and restaurants located in airports, hospitals, and dining halls in colleges and universities are exempt from the requirements of this Executive Order. Hotel restaurants may continue to provide room service and carry-out. Catering services may continue. Schools and other entities that typically provide food services to students or members of the public may continue to do so under this Executive Order on the condition that the food is provided to students or members of the public on a pick-up and takeaway basis only.

    All businesses covered in this section may permit outdoor on-premises food and beverage consumption in accordance with DCEO guidance and when permitted by local ordinances and regulations.

f. **Requirements for fitness and exercise gyms.** Fitness and exercise gyms may be open for the following activities, but must conduct business in a manner consistent with DCEO guidance: Personal training sessions involving one trainer and one customer; outdoor training in groups no larger than 10 with social distancing; sale of retail merchandise; and onsite filming or streaming of remote classes conducted by a single trainer. Fitness and exercise gyms may not allow other activities, including member workouts, because of the heightened risk of transmission of COVID-19 when people exercise together and share equipment in an indoor space.

g. **Requirements for personal services facilities.** Personal services facilities such as spas, hair salons, barber shops, nail salons, waxing centers, tattoo parlors, and similar facilities may be open but must ensure the use of face coverings, adherence to social distancing requirements, and use of capacity limits in accordance with DCEO guidance.

h. **Requirements for outdoor recreation, youth day camps, and youth sports.** Businesses offering outdoor recreation, youth day camps, and youth sports may

7

SHC-TJBC, Inc. v. Cincinnati-Complaint Exhibits--000380

be open but must ensure the use of face coverings, adherence to social distancing requirements, and must take other public health steps in accordance with DCEO guidance.

  i. **Places of public amusement.**  Except as permitted by this Executive Order or by DCEO guidance, places of public amusement must remain closed to the public.  Places of public amusement include but are not limited to, locations with amusement rides, carnivals, amusement parks, water parks, aquariums, zoos, museums, arcades, fairs, children's play centers, playgrounds, theme parks, bowling alleys, movie and other theaters, and concert and music halls.  Places of public amusement, like other businesses, may continue to:

     i. Perform necessary activities to maintain the value of the business's inventory, preserve the condition of the business's physical plant and equipment, ensure security, process payroll and employee benefits, or for related functions.

     ii. Perform necessary activities to facilitate employees of the business being able to continue to work remotely.

     iii. Fulfill online and telephonic retail orders through pick-up or delivery.

4. **Exemptions.**

   a. **Free exercise of religion**.  This Executive Order does not limit the free exercise of religion.  To protect the health and safety of faith leaders, staff, congregants and visitors, religious organizations and houses of worship are encouraged to consult and follow the recommended practices and guidelines from the Illinois Department of Public Health.[3]  As set forth in the IDPH guidelines, the safest practices for religious organizations at this time are to provide services online, in a drive-in format, or outdoors (and consistent with social distancing requirements and guidance regarding wearing face coverings), and to limit indoor services to 10 people.  Religious organizations are encouraged to take steps to ensure social distancing, the use of face coverings, and implementation of other public health measures.

   b. **Emergency functions.**  All first responders, emergency management personnel, emergency dispatchers, court personnel, law enforcement and corrections personnel, hazardous materials responders, child protection and child welfare personnel, housing and shelter personnel, military, and other governmental employees working for or to support the emergency response are exempt from

---

[3] This guidance is available at: https://www.dph.illinois.gov/covid19/community-guidance/places-worship-guidance

SHC-TJBC, Inc. v. Cincinnati-Complaint Exhibits--000381

this Executive Order, but are encouraged to practice social distancing and take recommended public health measures.

c. **Governmental functions.** This Executive Order does not apply to the United States government and does not affect services provided by the State or any municipal, township, county, subdivision or agency of government and needed to ensure the continuing operation of the government agencies or to provide for or support the health, safety and welfare of the public.

5. **Social Distancing, Face Covering, and PPE Requirements**. For purposes of this Executive Order, social distancing includes maintaining at least six-foot distance from other individuals, washing hands with soap and water for at least twenty seconds as frequently as possible or using hand sanitizer, covering coughs or sneezes (into the sleeve or elbow, not hands), regularly cleaning high-touch surfaces, and not shaking hands.

   a. **Required measures.** Businesses must take proactive measures to ensure compliance with Social Distancing Requirements, including where possible:

      i. **Designate six-foot distances**. Designating with signage, tape, or by other means six-foot spacing for employees and customers to maintain appropriate distance;

      ii. **Hand sanitizer and sanitizing products.** Having hand sanitizer and sanitizing products readily available for employees and customers;

      iii. **Separate operating hours for vulnerable populations**. Implementing separate operating hours for elderly and vulnerable customers;

      iv. **Online and remote access**. Posting online whether a facility is open and how best to reach the facility and continue services by phone or remotely; and

      v. **Face Coverings and PPE**. Providing employees with appropriate face coverings and requiring that employees wear face coverings where maintaining a six-foot social distance is not possible at all times. When the work circumstances require, providing employees with other PPE in addition to face coverings.

6. **Enforcement**. This Executive Order may be enforced by State and local law enforcement pursuant to, *inter alia*, Section 7, Section 15, Section 18, and Section 19 of the Illinois Emergency Management Agency Act, 20 ILCS 3305.

SHC-TJBC, Inc. v. Cincinnati-Complaint Exhibits--000382

Businesses must follow guidance provided or published by the Illinois Department of Commerce and Economic Opportunity regarding safety measures during Phase III, and the Illinois Department of Public Health, local public health departments, and the Workplace Rights Bureau of the Office of the Illinois Attorney General with respect to Social Distancing Requirements. Pursuant to Section 25(b) of the Whistleblower Act, 740 ILCS 174, businesses are prohibited from retaliating against an employee for disclosing information where the employee has reasonable cause to believe that the information discloses a violation of this Order.

7. **No limitation on authority**. Nothing in this Executive Order shall, in any way, alter or modify any existing legal authority allowing the State or any county, or local government body to order (1) any quarantine or isolation that may require an individual to remain inside a particular residential property or medical facility for a limited period of time, including the duration of this public health emergency, or (2) any closure of a specific location for a limited period of time, including the duration of this public health emergency. Nothing in this Executive Order shall be construed as an exercise of any authority to order any quarantine, isolation, or closure. Nothing in this Executive Order shall, in any way, alter or modify any existing legal authority allowing a county or local government body to enact provisions that are stricter than those in this Executive Order.

8. **Savings clause**. If any provision of this Executive Order or its application to any person or circumstance is held invalid by any court of competent jurisdiction, this invalidity does not affect any other provision or application of this Executive Order, which can be given effect without the invalid provision or application. To achieve this purpose, the provisions of this Executive Order are declared to be severable. This Executive Order is meant to be read consistently with any Court order regarding this Executive Order.

_____
**JB Pritzker, Governor**

Issued by the Governor May 29, 2020
Filed by the Secretary of State May 29, 2020