# Exhibit 13-1

SHC-TJBC, Inc. v. Cincinnati-Complaint Exhibits--000397



FILED
INDEX DEPARTMENT
JUN 26 2020
IN THE OFFICE OF
SECRETARY OF STATE

June 26, 2020                                                                 Executive Order 2020-43

### EXECUTIVE ORDER 2020-43
### (COVID-19 EXECUTIVE ORDER NO. 41)

#### Community Revitalization Order

**WHEREAS,** since early March 2020, Illinois has faced a pandemic that has caused extraordinary sickness and loss of life, infecting over 140,000 and growing, and taking the lives of thousands of residents; and,

**WHEREAS,** at all times but especially during a public health crisis, protecting the health and safety of Illinoisans is among the most important functions of State government; and,

**WHEREAS,** as Illinois enters the fifth month of responding to the public health disaster caused by Coronavirus Disease 2019 (COVID-19), a novel severe acute respiratory illness that spreads rapidly through respiratory transmissions and that continues to be without an effective treatment or vaccine, the burden on residents, healthcare providers, first responders, and governments throughout the State is unprecedented; and,

**WHEREAS,** as circumstances surrounding COVID-19 rapidly evolve and new evidence emerges, there have been frequent changes in information and public health guidance; and,

**WHEREAS,** although the CDC initially recommended against wearing cloth face coverings or masks as protection, as a result of research on asymptomatic and pre-symptomatic transmission, the CDC revised its conclusions and recommends wearing cloth face coverings in public settings where social distancing measures are difficult to maintain; and,

**WHEREAS,** public health research and guidance increasingly supports wearing cloth face coverings in public settings where social distancing measures are difficult to maintain, and indicates that the risk of transmission outdoors is less than the risk of transmission indoors; and,

**WHEREAS,** as COVID-19 has spread in Illinois over the course of the Gubernatorial Disaster Proclamations, the circumstances causing a disaster throughout the State have changed and

**WHEREAS,** the CDC now estimates that for every reported case of COVID-19, there are 10 unreported infections, resulting in a number of total cases in the country that may be 10 times higher than currently reported; and,

**WHEREAS,** social distancing, face coverings, and other public health precautions have proven to be critical in slowing and stopping the spread of COVID-19; and,

**WHEREAS,** although the number of new COVID-19 cases has decreased in recent weeks, the virus continues to infect thousands of individuals and claim the lives of too many Illinoisans each day; and,

**WHEREAS,** while the precautions taken by Illinoisans have led to a steep decline in the number of COVID-19 cases and deaths in the State in recent weeks, other states that have resisted taking public health precautions or that lifted those precautions earlier are now experiencing exponential growth and record high numbers of cases; and,

**WHEREAS** COVID-19 has claimed the lives of and continues to impact the health of Black and Hispanic Illinoisans at a disproportionately high rate – magnifying significant health disparities and inequities; and,

**WHEREAS,** while hospitalizations have declined, Illinois is using a significant percentage of hospital beds and ICU beds, and, if COVID-19 cases were to surge, the State could face a shortage of critical health care resources; and,

**WHEREAS,** in addition to causing the tragic loss of more than 6,800 Illinoisans and wreaking havoc on the physical health of tens of thousands more, COVID-19 has caused extensive economic loss and continues to threaten the financial welfare of a significant number of individuals and businesses across the nation and the State; and,

**WHEREAS,** the Illinois Department of Employment Security announced that the State's unemployment rate rose to 16.4% in April, with 762,000 jobs lost during that month; and,

**WHEREAS,** the Illinois Department of Employment Security announced that the State's unemployment rate was 15.2% in May, and that major Illinois industries such as leisure and hospitality, transportation and utilities, and educational and health services had been particularly hard-hit during the March to May period; and,

**WHEREAS,** the Illinois Department of Employment Security is responding to the economic crisis in a number of ways, including through the Pandemic Unemployment Assistance program; and,

**WHEREAS,** the Department of Commerce and Economic Opportunity is working to address the economic crisis, including through assistance programs such as the Business Interruption Grants Program for businesses that experienced a limited ability to operate due to COVID-19 related closures; and,

**WHEREAS,** the economic loss and insecurity caused by COVID-19 threatens the viability of business and the access to housing, medical care, food, and other critical resources that directly impact the health and safety of residents; and,

**WHEREAS,** based on the foregoing facts, and considering the expected continuing spread of COVID-19 and the ongoing health and economic impacts that will be felt over the coming month by people across the State, I declared that the current circumstances in Illinois surrounding the

**THEREFORE**, by the powers vested in me as the Governor of the State of Illinois, pursuant to the Illinois Constitution and Sections 7(1), 7(2), 7(3), 7(8), 7(9), and 7(12) of the Illinois Emergency Management Agency Act, 20 ILCS 3305, and consistent with the powers in public health laws, I hereby order the following, effective immediately:

**Community Revitalization Order**

1. **Intent of this Executive Order.** The intent of this Executive Order is to safely and conscientiously resume and expand activities that were paused or limited as COVID-19 cases rose exponentially and threatened to overwhelm our healthcare system. As Illinoisans safely resume and expand these activities, we must not backslide on the progress we have made. We cannot risk overwhelming our healthcare system, and we must prioritize the health and lives of all Illinoisans, especially the most vulnerable among us. While protecting our communities, we will restore our economy and begin to repair the economic damage that the virus has caused. The intent of this Executive Order is to effectuate those goals.

    This Executive Order supersedes Executive Order 2020-38.

2. **Public health requirements for individuals.** Individuals must take the following public health steps to protect their own and their neighbors' health and lives:

    a. **Practice social distancing.** To the extent individuals are using shared spaces when outside their residence, including when outdoors, they must at all times and as much as reasonably possible maintain social distancing of at least six feet from any other person who does not live with them.

    b. **Wear a face covering in public places or when working.**[1] Any individual who is over age two and able to medically tolerate a face covering (a mask or cloth face covering) shall be required to cover their nose and mouth with a face covering when in a public place and unable to maintain a six-foot social distance. This requirement applies whether in an indoor space, such as a store, or in a public outdoor space where maintaining a six-foot social distance is not always possible.

    c. **Elderly people and those who are vulnerable as a result of illness should take additional precautions.** People at high risk of severe illness from COVID-19, including elderly people and those with a health condition that may make them vulnerable, are urged to stay in their residence and minimize in-person contact with others to the extent possible.

    d. **Limit gatherings.** Any gathering of more than fifty people is prohibited unless exempted by this Executive Order. Nothing in this Executive Order prohibits the gathering of members of a household or residence. Because in-person contact presents the greatest risk of transmission of COVID-19, Illinoisans are encouraged to continue limiting in-person contact with others and to expand their social contact cautiously. Gathering remotely continues to be the safest way to interact with those outside a household or residence.

3. **Public health requirements for businesses, nonprofits, and other organizations.** For the purposes of this Executive Order, covered businesses include any for-profit, non-profit or educational entity, regardless of the nature of the service, the function it performs, or its corporate or entity structure. Those entities must take the following public health measures to protect their employees, their customers, and all others who come into physical contact with their operations:

   a. **Requirements for all businesses.** All businesses must:
      - continue to evaluate which employees are able to work from home, and are encouraged to facilitate remote work from home when possible;
      - ensure that employees practice social distancing and wear face coverings when social distancing is not always possible;
      - ensure that all spaces where employees may gather, including locker rooms and lunchrooms, allow for social distancing; and
      - ensure that all visitors (customers, vendors, etc.) to the workplace can practice social distancing; but if maintaining a six-foot social distance will not be possible at all times, encourage visitors to wear face coverings; and
      - prominently post the guidance from the Illinois Department of Public Health (IDPH) and Office of the Illinois Attorney General regarding workplace safety during the COVID-19 emergency.[2]

   The Department of Commerce and Economic Opportunity (DCEO), in partnership with IDPH, has developed industry-specific guidance and toolkits to help businesses operate safely and responsibly. These documents are available at: https://dceocovid19resources.com/restore-illinois/restore-illinois-phase-4/.

   b. **Requirements for retail stores.** Retail stores must ensure all employees practice social distancing and must take appropriate additional public health precautions, in accordance with DCEO guidance, which include:
      - provide face coverings to all employees who are not able to maintain a minimum six-foot social distance from customers and other employees at all times;
      - cap occupancy at 50 percent of store capacity, or, alternatively, at the occupancy limits based on store square footage set by the Department of Commerce and Economic Opportunity;
      - communicate with customers through in-store signage, and public service announcements and advertisements, about the social distancing and face covering requirements set forth in this Order; and
      - discontinue use of reusable bags.

   c. **Requirements for manufacturers.** Manufacturers must ensure all employees practice social distancing and must take appropriate additional public health precautions, in accordance with DCEO guidance, which include:
      - provide face coverings to all employees who are not able to maintain a minimum six-foot social distance at all times;
      - ensure that all spaces where employees may gather, including locker rooms and lunchrooms, allow for social distancing; and

public health precautions, in accordance with DCEO guidance, which may include:
- provide face coverings to all employees who are not able to maintain a minimum six-foot social distance at all times;
- consider implementing capacity limits where the physical space does not allow for social distancing;
- allow telework where possible; and
- develop and prominently post plans and signage to ensure social distancing in shared spaces such as waiting rooms, service counters, and cafeterias.

e. **Requirements for meetings and events.** Indoor venues and meeting spaces can operate with the lesser of fifty attendees or fifty percent of room capacity, and in accordance with DCEO guidance.

f. **Requirements for restaurants and bars.** All businesses that offer food or beverages for on-premises consumption—including restaurants, bars, grocery stores, and food halls—may resume service for on-premises consumption, as permitted by DCEO guidance. Such businesses continue to be permitted and encouraged to serve food and beverages so that they may be consumed off-premises, as permitted by law, through means such as in-house delivery, third-party delivery, drive-through, and curbside pick-up. Establishments offering food or beverages for on-premises consumption or for carry-out must ensure that they have an environment where patrons maintain adequate social distancing. All businesses covered in this section may permit outdoor on-premises food and beverage consumption in accordance with DCEO guidance and when permitted by local ordinances and regulations.

g. **Requirements for fitness and exercise gyms.** Fitness and exercise gyms may be open in a manner consistent with DCEO guidance, which involves operating for member workouts at a maximum of 50 percent capacity and with social distancing and other precautions.

h. **Requirements for personal services facilities.** Personal services facilities such as spas, hair salons, barber shops, nail salons, waxing centers, tattoo parlors, and similar facilities may be open but must ensure the use of face coverings, adherence to social distancing requirements, and use of capacity limits in accordance with DCEO guidance.

i. **Requirements for outdoor recreation, youth day camps, and youth sports.** Businesses offering outdoor recreation, youth day camps, and youth sports may be open but must ensure the use of face coverings, adherence to social distancing requirements, and must take other public health steps in accordance with DCEO guidance.

j. **Requirements for places of public amusement.** Places of public amusement may resume services consistent with DCEO guidance for indoor and outdoor recreation (including but not limited to arcades, bowling alleys, and driving

    i. Perform necessary activities to maintain the value of the business's inventory, preserve the condition of the business's physical plant and equipment, ensure security, process payroll and employee benefits, or for related functions.

    ii. Perform necessary activities to facilitate employees of the business being able to continue to work remotely.

    iii. Fulfill online and telephonic retail orders through pick-up or delivery.

4. **Exemptions.**

   a. **Free exercise of religion**. This Executive Order does not limit the free exercise of religion. To protect the health and safety of faith leaders, staff, congregants and visitors, religious organizations and houses of worship are encouraged to consult and follow the recommended practices and guidelines from the Illinois Department of Public Health.[3] As set forth in the IDPH guidelines, the safest practices for religious organizations at this time are to provide services online, in a drive-in format, or outdoors (and consistent with social distancing requirements and guidance regarding wearing face coverings), and to limit indoor services to 10 people. Religious organizations are encouraged to take steps to ensure social distancing, the use of face coverings, and implementation of other public health measures.

   b. **Emergency functions.** All first responders, emergency management personnel, emergency dispatchers, court personnel, law enforcement and corrections personnel, hazardous materials responders, child protection and child welfare personnel, housing and shelter personnel, military, and other governmental employees working for or to support the emergency response are exempt from this Executive Order, but are encouraged to practice social distancing and take recommended public health measures.

   c. **Governmental functions.** This Executive Order does not apply to the United States government and does not affect services provided by the State or any municipal, township, county, subdivision or agency of government and needed to ensure the continuing operation of the government agencies or to provide for or support the health, safety and welfare of the public.

5. **Social Distancing, Face Covering, and PPE Requirements**. For purposes of this Executive Order, social distancing includes maintaining at least six-foot distance from other individuals, washing hands with soap and water for at least twenty seconds as frequently as possible or using hand sanitizer, covering coughs or sneezes (into the sleeve or elbow, not hands), regularly cleaning high-touch surfaces, and not shaking hands.

   a. **Required measures.** Businesses must take proactive measures to ensure compliance with Social Distancing Requirements, including where possible:

       i. **Designate six-foot distances**. Designating with signage, tape, or by other

    iii. **Separate operating hours for vulnerable populations**. Implementing separate operating hours for elderly and vulnerable customers;

    iv. **Online and remote access**. Posting online whether a facility is open and how best to reach the facility and continue services by phone or remotely; and

    v. **Face Coverings and PPE**. Providing employees with appropriate face coverings and requiring that employees wear face coverings where maintaining a six-foot social distance is not possible at all times. When the work circumstances require, providing employees with other PPE in addition to face coverings.

6. **Enforcement**. This Executive Order may be enforced by State and local law enforcement pursuant to, *inter alia*, Section 7, Section 15, Section 18, and Section 19 of the Illinois Emergency Management Agency Act, 20 ILCS 3305.

   Businesses must follow guidance provided or published by the Illinois Department of Commerce and Economic Opportunity regarding safety measures during Phase IV, and the Illinois Department of Public Health, local public health departments, and the Workplace Rights Bureau of the Office of the Illinois Attorney General with respect to Social Distancing Requirements. Pursuant to Section 25(b) of the Whistleblower Act, 740 ILCS 174, businesses are prohibited from retaliating against an employee for disclosing information where the employee has reasonable cause to believe that the information discloses a violation of this Order.

7. **No limitation on authority**. Nothing in this Executive Order shall, in any way, alter or modify any existing legal authority allowing the State or any county, or local government body to order (1) any quarantine or isolation that may require an individual to remain inside a particular residential property or medical facility for a limited period of time, including the duration of this public health emergency, or (2) any closure of a specific location for a limited period of time, including the duration of this public health emergency. Nothing in this Executive Order shall be construed as an exercise of any authority to order any quarantine, isolation, or closure. Nothing in this Executive Order shall, in any way, alter or modify any existing legal authority allowing a county or local government body to enact provisions that are stricter than those in this Executive Order.

8. **Savings clause**. If any provision of this Executive Order or its application to any person or circumstance is held invalid by any court of competent jurisdiction, this invalidity does not affect any other provision or application of this Executive Order, which can be given effect without the invalid provision or application. To achieve this purpose, the provisions of this Executive Order are declared to be severable. This Executive Order is meant to be read consistently with any Court order regarding this Executive Order.

_____