# Exhibit 19



The Cincinnati Insurance Company ▪ The Cincinnati Indemnity Company
The Cincinnati Casualty Company ▪ The Cincinnati Specialty Underwriters Insurance Company
The Cincinnati Life Insurance Company

Jay McElhaney, CPCU, AIC
Field Claims Superintendent

May 29, 2020

**VIA EMAIL AND U.S. MAIL**

SIMMONS HANLY CONROY
ATTN: TED GIANARIS
ONE COURT STREET
ALTON, IL 62002

Email: tgianaris@simmonsfirm.com

> **Re:**  **Insured:**  TJBC, Inc. dba 4204 Main Street Brewing Co.
> **Policy No.:**  ETD 0451206
> **Claim No.:**  3527623
> **Date of Loss:** 3/16/20

Dear Mr. Gianaris:

This letter acknowledges receipt of your representation and confirms that we will forward a certified copy of your client's policy, once received from our headquarters. This letter further provides Cincinnati Insurance Company's ("Cincinnati") coverage decision for the above-referenced claim made by TJBC, Inc. dba 4204 Main Street Brewing Co. ("you" or "your" or "your client"). As submitted, the claim involves the Novel Coronavirus known as SARS-CoV-2, which causes the viral infection known as COVID-19 ("Coronavirus"). The claim asserts Government shutdown due to COVID-19. Cincinnati has determined that coverage is unavailable for the claimed loss. Cincinnati regrets that this decision is necessary and wants to describe the basis for its decision. Should you have any disagreement with the basis for this decision, Cincinnati invites you to state the reasons for your disagreement in writing, including by submitting any additional information or documentation. Cincinnati will consider any further information or documents you may supply.

**I.**  **SUMMARY**

The Cincinnati policy provides coverage for direct physical loss or damage to Covered Property at the premises. This direct physical loss or direct physical damage must be to property at the covered premises. Cincinnati's investigation has found no evidence of direct physical loss or damage at your premises. Similarly, there is no evidence of damage to property at other locations, precluding coverage for orders of civil authority.

Nothing in this letter is a waiver of any rights available to Cincinnati under the policy or applicable law. Cincinnati reserves the right to rely on additional rights and/or language in the policy whether or not discussed in this letter.

## II.    THE CINCINNATI POLICY

Cincinnati issued policy number ETD 0451206 to TJBC, Inc. dba 4204 Main Street Brewing Co. (the "Policy"). The Policy's effective dates are from 8/6/17 to 8/6/20. The Commercial Property Coverage provides the following limits of insurance:

Scheduled Location # 2   6435 W. Main St. Belleville, IL 62223-3801

| | |
|---|---|
| Building | $3,750,000 |
| Mine Subsidence | $750,000 |
| Business Personal Property | $1,265,000 |
| Business Income w/ Extra Expense | $1,000,000 |

Scheduled Location #3   4204 W. Main St. Belleville, IL 62226-5501

| | |
|---|---|
| Business Income w/ Extra Expense | $100,000 (FA272 06/13) |
| Building 1 | |
|    Building | $1,000,000 |
|    Mine Subsidence | $750,000 |
|    Business Personal Property | $750,000 |
| Building 2 | |
|    Building | $88,400 |
|    Mine Subsidence | $88,400 |
|    Business Personal Property | $41,200 |
| Building 3 | |
|    Building | $208,000 |
|    Mine Subsidence | $208,000 |
|    Business Personal Property | $25,000 |

## III.    BACKGROUND

On March 27, 2020 your client presented a claim for loss of income and product due to the COVID-19 outbreak.  On March 27, 2020 your client was contacted by Cincinnati Insurance Senior Claims Specialist, Eric Kutilek, acknowledging receipt of the claim and advising on the forthcoming Reservation of Rights letter.  On March 30, 2020 we sent your client a Reservation of Rights letter, outlining key policy information, and requesting specific information and documentation.

On April 6, 2020 Senior Claims Specialist, Erick Kutilek, sent your client an email, checking to confirm their receipt of the Reservation of Rights letter.  On April 14, 2020 we sent a letter advising on the file transfer from Senior Claims Specialist, Eric Kutilek, to Field Claims Superintendent, Jay McElhaney.  On May 8, 2020 we sent your client a follow up letter, reiterating the request for specific information and documentation.  On May 22, 2020 you sent a letter presenting a claim under your client's civil authority, business income and extra expense, and other unspecified coverages. Furthermore, your

letter states, among other things, that Illinois Executive Order 2020-07 "establishes (1) the presence of coronavirus at other premises in Illinois, and (2) that the widespread and growing presence in Illinois is what caused the civil authority order to be issued." You provided copies of the State of Illinois Executive Orders 2020-07, 2020-18, 2020-32, and 2020-33.

## IV.   NO COVERAGE UNDER THE POLICY FOR LOSS OF INCOME DUE TO CORONAVIRUS

### A.   No Direct Physical Loss

The Policy[1] provides the following coverage:

> We will pay for direct physical "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

(FM 101 04 04 at p. 3.) The Policy defines "loss" as "accidental loss or damage." (FM 101 04 04 at p. 34.) The Policy defines "premises" as "the Location of Premises described in the Declarations." (FM 101 04 04 at p. 35.)

This claim does not satisfy the Policy's insuring agreement. The claim does not involve direct, physical loss to property at your premises caused by a Covered Cause of Loss. Accordingly, the Policy's insuring agreement is not met and coverage is unavailable under the Policy.

### B.   No Business Income and Extra Expense Coverage

The Policy's Coverage Extensions section contains provisions for Business Income and Extra Expense coverage, included in Form FM 101 04 04:

**(1) Business Income**

> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss. With respect to "loss" to personal property in the open or personal property in a vehicle, the "premises" include the area within 1000 feet of the site at which the "premises" are located.

**(2) Extra Expense**

> We will pay "Extra Expense" you incur during the "period of restoration":

---

[1]     We cite to or quote provisions of the Policy in this letter. In some instances, in the interests of brevity, we quote or cite only portions of the language. Any terms in bold are in bold in the policy and do not denote additional emphasis unless so indicated. Please refer to the Policy for a full reading of all the terms, conditions or other language cited or referenced.

**(a)** To avoid or minimize the "suspension" of business and to continue "operations":

    **1)** At the "premises"; or

    **2)** At replacement locations or at temporary locations, including:

        **a)** Relocation expenses; and

        **b)** Costs to equip and operate the replacement or temporary locations; or

**(b)** To minimize the "suspension" of business if you cannot continue "operations".

However:

**(a)** We will pay "Extra Expense" to repair or replace any property, or to research, replace, or restore the lost information on damaged "valuable papers and records" only to the extent it reduces the amount of "loss" that otherwise would have been payable under this Coverage Part; and

**(b)** If any property obtained for temporary use during the "period of restoration" remains after the resumption of normal "operations", the amount we will pay under this Coverage will be reduced by the salvage value of that property.

(FM 101 04 04 at p. 16-17.)

Additionally, the Policy at Form FA 213 04 04 provides separate Business Income and Extra Expense coverage provisions:

**1. <u>Business Income</u>**

  **a.** We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical "loss" to property at a "premises" which is described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss. With respect to "loss" to personal property in the open or personal property in a vehicle, the "premises" include the area within 1,000 feet of the site at which the "premises" are located.

  **b.** Business Income means the:

    **a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

    **b.** Continuing normal operating expenses incurred, including payroll.

  **c.** If you are a tenant and occupy only part of the site at which the "premises" are located, for the purposes of this Coverage Part only,

your "premises" is the portion of the building which you rent, lease or occupy, including:

**(1)** Any area within the building or on the site at which the "premises" are located if that area services or is used to gain access to the described "premises".

**(2)** Your personal property in the open (or in a vehicle) within 1,000 feet.

## 2. <u>Extra Expense</u>

**a.** We will pay the actual and necessary Extra Expense you incur due to direct physical "loss" to property at a "premises" which is described in the Declarations and for which an Extra Expense Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss. With respect to "loss" to personal property in the open or personal property in a vehicle, the "premises" include the area within 1,000 feet of the site at which the "premises" are located.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical "loss" to property caused by or resulting from a Covered Cause of Loss. Coverage pertains to expenses incurred (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue "operations":

**(a)** At the "premises"; or

**(b)** At replacement locations or at temporary locations, including:

   **1)** Relocation expenses; and

   **2)** Costs to equip and operate the replacement or temporary locations.

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

**(3)** To the extent it reduces the amount of "loss" that otherwise would have been payable under this Coverage Part, we will pay any Extra Expense to:

**(a)** Repair or replace any. property; Or

**(b)** Research, replace or restore the lost information on damaged "valuable papers and records".

However, if any property obtained for temporary use during the "period of restoration" remains after the resumption of normal "operations", the amount we will pay under this Coverage will be reduced by the salvage value of that property.

    **c.** If you are a tenant and occupy only part of the site at which the "premises" are located, for the purposes of this Coverage Part only, your "premises" is the portion of the building which you rent, lease or occupy, including:

       **(1)** Any area within the building or on the site at which the "premises" are located if that area services or is used to gain access to the described "premises".

       **(2)** Your personal property in the open (or in a vehicle) within 1,000 feet.

(FA 213 04 04 at pp.1-2.)

Like the Policy's insuring agreement, the Business Income and Extra Expense coverages require that there be direct physical loss or damage to Covered Property at the premises or within 1,000 feet of those premises. There is no evidence of any such physical loss or damage. Accordingly, the Business Income and Extra Expense requirements are not satisfied and coverage is unavailable under the Policy.

**C.** **No Civil Authority Coverage**

The Policy's Coverage Extensions section contains provisions for Civil Authority coverage, included in Form FM 101 04 04:

> We will pay for the actual loss of "Business Income" you sustain and "Extra Expense" you incur caused by action of civil authority that prohibits access to the "premises" due to direct physical "loss" to property, other than at the "premises", caused by or resulting from any Covered Cause of Loss.

> This coverage will apply for a period of up to 30 consecutive days from the date of that action.

(FM 101 04 04 at p. 17.)

Additionally, the Policy at Form FA 213 04 04 provides separate Civil Authority coverage provisions:

> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the "premises" due to direct physical "loss" to property, other than at the "premises", caused by or resulting from any Covered Cause of Loss.

> This coverage for Business Income will begin immediately after the time of that action and will apply for a period of up to 30 days from the date of that action.

This coverage for Extra Expense will begin immediately after the time of that action and will end:

(1)  30 consecutive days after the time of that action; or

(2)  When your Business Income coverage ends;

whichever is later.

(FA 213 04 04 at p. 2.)

Although your client closed their business in response to a governmental order, there is no evidence that the order was entered because of direct damage to property at other locations or dangerous physical conditions at other locations. Moreover, the order does not restrict access to the area immediately surrounding your premises. Because these requisite elements of the Civil Authority coverage are not present here, coverage is unavailable under the Policy.


**V.    CONCLUSION**

For the reasons discussed above, Cincinnati has concluded that the Policy provides no coverage for your client's claim. Cincinnati therefore cannot indemnify TJBC, Inc. dba 4204 Main Street Brewing Co. for any loss of business income from Coronavirus.

You should note that the U.S. Small Business Administration ("SBA") may be providing assistance for citizens in your client's circumstances. I understand that the SBA's contact information is:

Website:    https://www.sba.gov/funding-programs/disaster-assistance
Phone:      1-800-659-2955

This letter is not intended to be a limitation or waiver of any rights available to Cincinnati. Cincinnati's position is based on the information available to date. Cincinnati reserves all of its rights under the Policy and the applicable law. Cincinnati reserves the right to rely on any and all provisions of the Policy whether or not addressed in this letter.

If you have any information that you believe may impact any of the issues raised in this letter, please forward it to us as soon as possible. If you believe that we have misunderstood the facts or are in error regarding any of the statements set forth above, please notify us as soon as possible.

Please feel free to contact me if you have any questions or would like to discuss this matter.

Rule 919 - "Notice of Availability" paragraph is required on 1st party claim denials: Part 919 of the Rules of the Illinois Department of Insurance requires that our company advise you that, if you wish to take this matter up with the Illinois Department of

Insurance, it maintains a Consumer Division in Chicago at 122 S. Michigan Ave., 19th Floor, Chicago, Illinois 60603 and in Springfield at 320 West Washington Street, Springfield, Illinois 62767.

Very truly yours,

Jay McElhaney, CPCU, AIC
P.O. Box 205
St. Albans, MO 63073
Phone: 636-451-6886
Email: jay_mcelhaney@cinfin.com

cc:     Lakenan Insurance
        rtoth@lakenan.com