# PLAINTIFF'S EXHIBIT 21

2020 WL 4692385
Only the Westlaw citation is currently available.
United States District Court, W.D. Missouri, Southern Division.

STUDIO 417, INC., et al., Plaintiffs,
v.
The CINCINNATI INSURANCE COMPANY, Defendant.

Case No. 20-cv-03127-SRB
|
Signed 08/12/2020

**Synopsis**
**Background:** Insureds, businesses which had purchased all-risk property insurance policies, brought action against property insurer, seeking declaratory judgment and class certification and alleging breach of contract arising from insurer's denial of coverage for losses resulting from COVID-19 pandemic. Property insurer moved to dismiss.

**Holdings:** The District Court, Stephen R. Bough, J., held that:

insureds adequately alleged that they incurred direct physical loss;

insureds plausibly stated claim for civil authority coverage;

insureds plausibly stated claim for ingress and egress coverage;

insureds plausibly stated claim for dependent property coverage; and

insureds plausibly stated claim for sue and labor coverage.

Motion denied.

**Procedural Posture(s):** Motion to Dismiss for Failure to State a Claim.

**Attorneys and Law Firms**

Jack Thomas Hyde, Thomas A. Rottinghaus, Tyler Hudson, Wagstaff & Cartmell, Jeremy M. Suhr, Brandon J.B. Boulware, Boulware Law LLC, Todd M. Johnson, Votava Nantz & Johnson LLC, Kansas City, MO, for Plaintiffs.

Daniel G. Litchfield, Pro Hac Vice, Litchfield Cavo LLP, Chicago, IL, Ericka Hammett, Pro Hac Vice, Litchfield Cavo LLP, Milwaukee, WI, Kelvin J. Fisher, Michael Lloyd Brown, Wallace Saunders, Overland Park, KS, for Defendant.

## ORDER

STEPHEN R. BOUGH, UNITED STATES DISTRICT JUDGE

*1 Before the Court is Defendant The Cincinnati Insurance Company's ("Defendant") Motion to Dismiss. (Doc. #20.) For the reasons set forth below, the motion is DENIED.

### I. BACKGROUND

Because this matter comes before the Court on a motion to dismiss, the following allegations in Plaintiffs' First Amended Class Action Complaint (the "Amended Complaint") are taken as true. (Doc. #16); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citations and quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015). [1]

The named Plaintiffs in this case are Studio 417, Inc. ("Studio 417"), Grand Street Dining, LLC ("Grand Street"), GSD Lenexa, LLC ("GSD"), Trezomare Operating Company, LLC ("Trezomare"), and V's Restaurant, Inc. ("V's Restaurant") (collectively, the "Plaintiffs"). Studio 417 operates hair salons in the Springfield, Missouri, metropolitan area. Grand Street, GSD, Trezomare, and V's Restaurant own and operate full-service dining restaurants in the Kansas City metropolitan area.

Plaintiffs purchased "all-risk" property insurance policies (the "Policies") from Defendant for their hair salons and restaurants. (Doc. #1-1, ¶ 26.) All-risk policies cover all risks of loss except for risks that are expressly and specifically excluded. The Policies include a Building and Personal Property Coverage Form and Business Income (and Extra Expense) Coverage Form. Defendant issued each Plaintiff a separate policy, and all were in effect during the applicable time period. The parties agree that the Policies contain the same relevant language.

The Policies provide that Defendant would pay for "direct 'loss' unless the 'loss' is excluded or limited" therein. (Doc. #16, ¶ 27.) A "Covered Cause of Loss" "is defined to mean accidental [direct] physical loss *or* accidental [direct] physical damage." (Doc. #16, ¶ 31) (emphasis supplied); (Doc. #1-1, pp. 24, 57.) [2] The Policies do not define "physical loss" or "physical damage." The Policies also "do not include, and are not subject to, any exclusion for losses caused by viruses or communicable diseases." (Doc. #16, ¶ 13.) A loss, as defined above, is a prerequisite to invoke the different types of coverage sought in this lawsuit. (*See* Doc. #21, p. 15.) These coverages are set forth below.

First, the Policies provide for Business Income coverage. Under this coverage, Defendant agreed to:

> pay for the actual loss of 'Business Income' ... you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.' The suspension must be caused by direct 'loss' to property at a 'premises' caused by or resulting from any Covered Cause of Loss.

(Doc. #1-1, pp. 37-38.)

Second, the Policies provide "Civil Authority" coverage. This coverage applies to:

 **\*2**  the actual loss of 'Business Income' sustained 'and necessary Extra Expense' sustained 'caused by action of civil authority that prohibits access to' the Covered Property when a Covered Cause of Loss causes direct damage to property other than the Covered Property, the civil authority prohibits access to the area immediately surrounding the damaged property, and 'the action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage[.]'

(Doc. #16, ¶ 42.)

Third, the Policies provide "Ingress and Egress" coverage. This coverage is specified as follows:

> We will pay for the actual loss of 'Business Income' you sustain and necessary Extra Expense you sustain caused by the prevention of existing ingress or egress at a 'premises' shown in the Declarations due to direct 'loss' by a Covered Cause of Loss at a location contiguous to such 'premises.' However, coverage does not apply if ingress or egress from the 'premises' is prohibited by civil authority.

(Doc. #1-1, p. 95.)

Fourth, the Policies provide "Dependent Property" coverage. This coverage applies if the insured suffers a loss of Business Income because of a suspension of its business "caused by direct 'loss' to 'dependent property.' " (Doc. #1-1, pp. 63-64.) "Dependent property means property operated by others whom [the insured] depend[s] on to ... deliver materials or services to [the insured] ... [a]ccept [the insured's] products or services ... [and] [a]ttract customers to [the insured's] business." (Doc. #1-1, p. 64.)

Finally, the Policies provide what is commonly known as "Sue and Labor" coverage. In relevant part, the Policies require the insured to "take all reasonable steps to protect the Covered Property from further damage," and to keep a record of expenses incurred to protect the Covered Property for consideration in the settlement of the claim. (Doc. #1-1, pp. 49-50.) The Policies do not exclude or limit losses from viruses, pandemics, or communicable diseases. (Doc. #16, ¶ 28.)

Plaintiffs seek coverage under the Policies for losses caused by the Coronavirus ("COVID-19") pandemic. Plaintiffs allege that over the last several months, it is likely that customers, employees, and/or other visitors to the insured properties were infected with COVID-19 and thereby infected the insured properties with the virus. (Doc. #1-1, ¶ 60.) Plaintiffs allege that COVID-19 "is a physical substance," that it "live[s] on" and is "active on inert physical surfaces," and is "emitted into the air." (Doc. #16, ¶¶ 47, 49-60.) Plaintiffs further allege that the presence of COVID-19 "renders physical property in their vicinity unsafe and

unusable," and that they "were forced to suspend or reduce business at their covered premises." (Doc. #1-1, ¶¶ 14, 58, 102.)

In response to the COVID-19 pandemic, civil authorities in Missouri and Kansas issued orders requiring the suspension of business at various establishments, including Plaintiffs' businesses (the "Closure Orders"). The Closure Orders "have required and continue to require Plaintiffs to cease and/or significantly reduce operations at, and ... have prohibited and continue to prohibit access to, the[ir] premises." (Doc. #16, ¶¶ 106-107.) Plaintiffs allege that the presence of COVID-19 and the Closure Orders caused a direct physical loss or direct physical damage to their premises "by denying use of and damaging the covered property, and by causing a necessary suspension of operations during a period of restoration." (Doc. #16, ¶¶ 102.) Plaintiffs allege that their losses are covered by the Business Income, Civil Authority, Ingress and Egress, Dependent Property, and Sue and Labor coverages discussed above. (Doc. #16, ¶¶ 103-108.) Plaintiffs provided Defendant notice of their losses, but Defendant denied the claims. (Doc. #16, ¶¶ 110-115.)

**\*3** On April 27, 2020, Plaintiffs filed this lawsuit against Defendant. The Amended Complaint asserts claims for a declaratory judgment and for breach of contract based on Business Income coverage (Counts I, II), Extra Expense coverage (Counts III, IV), Dependent Property coverage (Counts V, VI), Civil Authority coverage (Counts VII, VIII), Extended Business Income coverage (Counts IX, X), Ingress and Egress coverage (Counts XI, XII), and Sue and Labor coverage (Counts XIII, XIV). The Amended Complaint also seeks class certification for 14 nationwide classes (one for each cause of action) and a Missouri Subclass that consists of "all policyholders who purchased one of Defendant's policies in Missouri and were denied coverage due to COVID-19." (Doc. #16, ¶¶ 117-125; *see also* Doc. #21, pp. 12-13.)

Defendant responded to the Amended Complaint by filing the pending motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Defendant's overarching argument is that the Policies provide coverage "only for income losses tied to physical damage to property, not for economic loss caused by governmental or other efforts to protect the public from disease ... the same direct physical loss requirement applies to all the coverages for which Plaintiffs sue." (Doc. #21, p. 8.) Even if a loss is adequately alleged, Defendant argues that the Amended Complaint fails to state a claim as to each type of coverage at issue. Plaintiffs oppose the motion, and the parties' arguments are addressed below.

## II. LEGAL STANDARD

Rule 12(b)(6) provides that a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). When deciding a motion to dismiss, "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable." *Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (citations and quotations omitted).

Because this case is based on diversity jurisdiction, "state law controls the construction of [the] insurance policies[.]" *J.E. Jones Const. Co. v. Chubb & Sons, Inc.*, 486 F.3d 337, 340 (8th Cir. 2007). Under Missouri law, "[t]he interpretation of an insurance policy is a question of law to be determined by the Court." *Lafollette v. Liberty Mut. Fire Ins. Co.*, 139 F. Supp. 3d 1017, 1021 (W.D. Mo. 2015) (quoting *Mendota Ins. Co. v. Lawson*, 456 S.W.3d 898, 903 (Mo. App. W.D. 2015)).[3] "Missouri courts read insurance contracts 'as a whole and determine the intent of the parties, giving effect to that intent by enforcing the contract as written.' " *Id.* (citing *Thiemann v. Columbia Pub. Sch. Dist.*, 338 S.W.3d 835, 840 (Mo. App. W.D. 2011)). "Insurance policies are to be given a reasonable construction and interpreted so as to afford coverage rather than to defeat coverage." *Cincinnati Ins. Co. v. German St. Vincent Orphan Ass'n, Inc.*, 54 S.W.3d 661, 667 (Mo. App. E.D. 2001).

**\*4** "Policy terms are given the meaning which would be attached by an ordinary person of average understanding if purchasing insurance." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 763 (8th Cir. 2020) (applying Missouri law) (quotations omitted). When interpreting policy terms, "the central issue ... is determining whether any ambiguity exists, which occurs where there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the

contract." *Id.* (quotations omitted). If the "insurance policies are unambiguous, they will be enforced as written absent a statute or public policy requiring coverage. If the language is ambiguous, it will be construed against the insurer." *Id.* (quotations omitted).

### III. DISCUSSION

#### A. Plaintiffs Have Adequately Alleged a Direct "Physical Loss" Under the Policies.

Defendant's first argument is that Plaintiffs have not adequately pled a "physical loss" as required by the Policies. (Doc. # 21, pp. 7-8, 15-16, 19-25; Doc. #37, pp. 2-10.) Defendant argues that "direct physical loss requires actual, tangible, permanent, physical alteration of property." (Doc. #21, p. 19) (citing cases). Defendant claims that the Policies provide property insurance coverage, and "are designed to indemnify loss or damage to property, such as in the case of a fire or storm. [COVID-19] does not damage property; it hurts people." (Doc. #21, p. 7.) According to Defendant, the requirement of a tangible physical loss applies to—and precludes—each type of coverage sought in this case.

In response, Plaintiffs agree that "physical loss" and "physical damage" are "the key phrases" in the Policies. (Doc. #31, p. 7.) However, Plaintiffs emphasize that the Policies expressly cover "physical loss *or* physical damage." (Doc. #31, p. 11) (emphasis supplied). This "necessarily means that either a 'loss' or 'damage' is required, and that 'loss' is distinct from 'damage.' " (Doc. #31, p. 11.) As such, Plaintiffs argue that Defendant's focus on an actual physical alteration ignores the coverage for a "physical loss." Plaintiffs further argue that Defendant could have defined "physical loss" and "physical damage," but failed to do so. Plaintiffs argue this case should not be disposed of on a motion to dismiss because "even if [Defendant's] interpretation of the policy language is reasonable ... Plaintiffs' interpretation is also reasonable[.]" (Doc. #31, p. 11.)

Upon review of the record, the Court finds that Plaintiffs have adequately stated a claim for direct physical loss. First, because the Policies do not define a direct "physical loss" the Court must "rely on the plain and ordinary meaning of the phrase." *Vogt,* 963 F.3d at 763; *Mansion Hills Condo. Ass'n v. Am. Family Mut. Ins. Co.,* 62 S.W.3d 633, 638 (Mo. App. E.D. 2001) (recognizing that standard dictionaries should be consulted for determining ordinary meaning). The Merriam-Webster dictionary defines "direct" in part as "characterized by close logical, causal, or consequential relationship." Merriam-Webster, www.merriam-webster.com/dictionary/direct (last visited August 12, 2020). "Physical" is defined as "having material existence: perceptible especially through the senses and subject to the laws of nature." Merriam-Webster, www.merriam-webster.com/dictionary/physical (last visited August 12, 2020). "Loss" is "the act of losing possession" and "deprivation." Merriam-Webster, www.merriam-webster.com/dictionary/loss (last visited August 12, 2020).

Applying these definitions, Plaintiffs have adequately alleged a direct physical loss. Plaintiffs allege a causal relationship between COVID-19 and their alleged losses. Plaintiffs further allege that COVID-19 "is a physical substance," that it "live[s] on" and is "active on inert physical surfaces," and is also "emitted into the air." (Doc. #16, ¶¶ 47, 49-60.) COVID-19 allegedly attached to and deprived Plaintiffs of their property, making it "unsafe and unusable, resulting in direct physical loss to the premises and property." (Doc. #16, ¶ 58.) Based on these allegations, the Amended Complaint plausibly alleges a "direct physical loss" based on "the plain and ordinary meaning of the phrase." *Vogt,* 963 F.3d at 763.

**\*5** Second, the Court "must give meaning to all [policy] terms and, where possible, harmonize those terms in order to accomplish the intention of the parties." *Macheca Transp. v. Philadelphia Indem. Ins. Co.,* 649 F.3d 661, 669 (8th Cir. 2011) (applying Missouri law). Here, the Policies provide coverage for "accidental physical loss *or* accidental physical damage." (Doc. #1-1, p. 57) (emphasis supplied). Defendant conflates "loss" and "damage" in support of its argument that the Policies require a tangible, physical alteration. However, the Court must give meaning to both terms. *See Nautilus Grp., Inc. v. Allianz Global Risks US,* No. C11-5281BHS, 2012 WL 760940, at * 7 (W.D. Wash. Mar. 8, 2012) (stating that "if 'physical loss' was interpreted to mean 'damage,' then one or the other would be superfluous").

The Court's finding that Plaintiffs have adequately stated a claim is supported by case law. In *Hampton Foods, Inc. v. Aetna Cas. & Sur. Co.,* 787 F.2d 349 (8th Cir. 1986), the relevant provision provided that "[t]his policy insures against loss of or damage to the property insured ... resulting from all risks of direct physical loss[.]" *Id.* at 351. Applying Missouri law, the Eighth Circuit found this provision was ambiguous and affirmed the district court's decision that it covered "any loss or damage due to the *danger* of direct physical loss[.]" *Id.* at 352 (emphasis in original).

In *Mehl v. The Travelers Home & Marine Ins. Co.*, Case No. 16-CV-1325-CDP (E.D. Mo. May 2, 2018), the plaintiff discovered brown recluse spiders in his home. *Id.* at p. 1. The plaintiff unsuccessfully attempted to eliminate the spiders, and then left the home. *Id.* The plaintiff considered the property uninhabitable and filed a claim under his homeowners insurance policy for loss of use of the property. *Id.* After his insurance company denied the claim, the plaintiff filed suit for breach of contract. The insurance company moved for summary judgment and argued that the policy only covered "direct physical loss" which required "actual physical damage." *Id.* at p. 2.

*Mehl* rejected this argument. As in this case, the *Mehl* policy did not define "physical loss" and the insurance company "point[ed] to no language in the policy that would lead a reasonable insured to believe that actual physical damage is required for coverage." *Id.* Although the policy in *Mehl* provided coverage for "loss of use," *Mehl* supports the conclusion that "physical loss" is not synonymous with physical damage. *Id.*

Other courts have similarly recognized that even absent a physical alteration, a physical loss may occur when the property is uninhabitable or unusable for its intended purpose. *See Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (affirming denial of coverage but recognizing that "[w]hen the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been a distinct [physical] loss to its owner"); *Prudential Prop. & Cas. Ins. Co. v. Lilliard-Roberts*, CV–01–1362–ST, 2002 WL 31495830, at * 9 (D. Or. June 18, 2002) (citing case law for the proposition that "the inability to inhabit a building [is] a 'direct, physical loss' covered by insurance"); *General Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147, 152 (Minn. Ct. App. 2001) ("We have previously held that direct physical loss can exist without actual destruction of property or structural damage to property; it is sufficient to show that insured property is injured in some way.").

To be sure, and as argued by Defendant, there is case law in support of its position that physical tangible alteration is required to show a "physical loss." (Doc. #21, pp. 19-25; Doc. #37, pp. 3-10.)[4] However, Plaintiffs correctly respond that these cases were decided at the summary judgment stage, are factually dissimilar, and/or are not binding. For example, Defendant argues that "[a] seminal case concerning the direct physical loss requirement is *Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834 (8th Cir. 2006)." (Doc. #21, pp. 19-20.) However, *Source Food* was decided in the summary judgment context and under Minnesota law. *Source Food*, 465 F.3d at 834-36. Moreover, the facts of *Source Foods* are distinguishable. In that case, the insured's beef was not allowed to cross from Canada into the United States because of an embargo related to mad cow disease. *Id.* at 835. Because of the embargo, the insured was unable to fill orders and had to find a new supplier. Importantly, there was no evidence that the beef was actually contaminated. *Id.*

**\*6** The insured sought coverage based on a provision requiring "direct physical loss to property." The district court denied coverage, and the Eighth Circuit affirmed, explaining that:

> [a]lthough Source Food's beef product in the truck could not be transported to the United States due to the closing of the border to Canadian beef products, the beef product on the truck was not—as Source Foods concedes— physically contaminated or damaged in any manner. To characterize Source Food's inability to transport its truckload of beef product across the border and sell the beef product in the United States as direct physical loss to property would render the word 'physical' meaningless.

*Id.* at 838.

The facts alleged in this case do not involve the transportation of uncontaminated physical products. Instead, Plaintiffs allege that COVID-19 is a highly contagious virus that is physically "present ... in viral fluid particles," and is "deposited on surfaces or objects." (Doc. #16, ¶¶ 47, 50.) Plaintiffs further allege that this physical substance is likely on their premises and caused them to cease or suspend operations. Unlike *Source Foods*, the Plaintiffs expressly allege physical contamination. Finally, *Source Foods* recognized (under Minnesota law) that physical loss could be found without structure damage. *Source Foods*, 465 F.3d at 837 (stating that property could be "physically contaminated ... by the release of asbestos fibers"). Neither

*Source Foods* nor the other cases cited by Defendant warrant dismissal under Rule 12(b)(6).

Defendant's reply brief cites recent out-of-circuit decisions which found that COVID-19 does not cause direct physical loss. (Doc. #37, pp. 5-6.) For example, Defendant relies on *Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, 1:20-cv-03311-VEC (S.D.N.Y. 2020). Defendant argues that "*Social Life* famously states that the virus damages lungs, not printing presses." (Doc. #37, p. 6.) But the present case is not about whether COVID-19 damages lungs, and the presence of COVID-19 on premises, as is alleged here, is not a benign condition. Regardless of the allegations in *Social Life* or other cases, Plaintiffs here have plausibly alleged that COVID-19 particles attached to and damaged their property, which made their premises unsafe and unusable.[5] This is enough to survive a motion to dismiss.

Defendant also contends that if Plaintiffs' interpretation is accepted, physical loss would be found "whenever a business suffers economic harm." (Doc. #21, p. 22; Doc. #37, p. 2.) That is not what the Court holds here. Although Plaintiffs allege economic harm, that harm is tethered to their alleged physical loss caused by COVID-19 and the Closure Orders. (Doc. #1-1, ¶¶ 106-107) (alleging that the COVID-19 pandemic and Closure Orders required Plaintiffs to "cease and/or significantly reduce operations at, and ... have prohibited and continue to prohibit access to, the premises.")[6] For all these reasons, the Court finds that Plaintiffs have adequately alleged a direct physical loss under the Policies.[7]

### B. Plaintiffs Have Plausibly Stated a Claim for Civil Authority Coverage.

**\*7** Defendant next argues that Plaintiffs' claim for civil authority coverage should be dismissed for failure to state a claim. Defendant presents two arguments in support of dismissal. Defendant first contends that civil authority coverage requires "direct physical loss to property other than the Plaintiffs' property," and that "[j]ust as the Coronavirus is not causing direct physical loss to Plaintiffs' premises, it is not causing direct physical loss to other property." (Doc. #21, p. 27.)

This argument is rejected for substantially the same reasons as discussed above. Plaintiffs adequately allege that they suffered a physical loss, and such loss is applicable to other property. Additionally, Plaintiffs allege that civil authorities issued closure and stay at home orders throughout Missouri and Kansas, which includes property other than Plaintiffs' premises.

Defendant's second argument is that civil authority coverage "requires that access to Plaintiffs' premises be prohibited by an order of Civil Authority. But, none of the orders Plaintiffs allege prohibit access to their premises. To the contrary, the Plaintiffs admit ... that the Closure Orders allowed restaurant premises to remain open for food preparation, take-out and delivery. Likewise, Plaintiffs concede that the Closure Orders did not prohibit access to salon premises." (Doc. #21, pp. 28-29) (citations omitted).

Upon review of the record, the Court finds that Plaintiffs have adequately alleged that their access was prohibited. With respect to Studio 417's hair salons, the Amended Complaint alleges that a Closure Order "required hair salons and all other businesses that provide personal services to suspend operations." (Doc. #16, ¶ 67.) With respect to Plaintiffs' restaurants, the Closure Orders mandated "that all inside seating is prohibited in restaurants," and that "every person in the State of Missouri shall avoid eating or drinking at restaurants," with limited exceptions for "drive-thru, pickup, or delivery options." (Doc. #16, ¶¶ 71-80.)

At the motion to dismiss stage, these allegations plausibly allege that access was prohibited to such a degree as to trigger the civil authority coverage. *Compare TMC Stores, Inc. v. Federated Mut. Ins. Co.*, No. A04-1963, 2005 WL 1331700, at \* 4 (Minn. Ct. App. June 7, 2005) ("Because access remained and the level of business was not dramatically decreased, the civil authority section of the insurance policy is inapplicable and the district court did not err in granting summary judgment."). This is particularly true insofar as the Policies require that the "civil authority prohibits access," but does not specify "all access" or "any access" to the premises. For these reasons, Plaintiffs have adequately stated a claim for civil authority coverage.

### C. Plaintiffs Have Plausibly Stated a Claim for Ingress and Egress Coverage.

Defendant argues that Plaintiffs' claim for ingress and egress coverage should be dismissed for two reasons. First, Defendant argues that such coverage "requires both a direct physical loss at a location contiguous to the insured's property and the prevention of access to the insured's property as a result of that direct physical loss," and that Plaintiffs fail to allege a direct physical loss to any location. (Doc. #21, p.

30.) For substantially the same reasons discussed above, this argument is rejected.

Second, Defendant argues that this "coverage does not apply if ingress or egress from the 'premises' is prohibited by civil authority." (Doc. #21, p. 24; Doc. #1-1, p. 95.) Defendant contends that "[h]ere, the Closure Orders issued by civil authorities are the only identified causes of Plaintiffs' alleged losses." (Doc. #21, p. 30.) However, Plaintiffs have alleged that both COVID-19 and the Closure Orders rendered the premises unsafe for ingress and egress. (Doc. #1-1, p. 3, ¶ 14 ("Plaintiffs were forced to suspend or reduce business at their covered premises due to COVID-19 and the ensuing orders issued by civil authorities[.]"). The Court finds that Plaintiffs have adequately stated a claim for ingress and egress coverage.

### D. Plaintiffs Have Plausibly Stated a Claim for Dependent Property Coverage.

*8 Defendant argues that Plaintiffs' claim for dependent property coverage should be dismissed for two reasons. First, Defendant argues that this coverage "requires both a direct physical loss to dependent property and a necessary suspension of the insured's business as a result of that direct physical loss." (Doc. #21, p. 30.) Defendant contends that "[h]ere, again, the [Amended] Complaint does not allege any facts that show direct physical loss at any location, let alone a dependent property." (Doc. #21, pp. 30-31.) For substantially the same reasons discussed above, this argument is rejected.

Second, Defendant argues that Plaintiffs have failed to adequately allege a suspension of their businesses because of the lack of material or services from a "dependent property." (Doc. #21, pp. 30-31.) As stated above, dependent property is defined as "property operated by others whom [the insured] depend[s] on to ... deliver materials or services to [the insured] ... [a]ccept [the insured's] products or services ... [or] [a]ttract customers to [the insured's] business." (Doc. #1-1, p. 64.) The Amended Complaint adequately alleges that Plaintiffs suffered a loss of materials, services, and lack of customers as a result of COVID-19 and the Closure Orders. The Court therefore finds that Plaintiffs have adequately stated a claim for dependent property coverage.

### E. Plaintiffs Have Plausibly Stated a Claim for Sue and Labor Coverage.

Finally, Defendant moves to dismiss Plaintiffs' claim for sue and labor coverage. Defendant argues that this is not an additional coverage, but instead imposes a duty on the insured to prevent further damage and to keep a record of expenses incurred in the event of a covered loss. Defendant argues that because Plaintiffs have failed to adequately allege a covered loss, a claim has not been stated for this coverage.

However, regardless of the title of this claim, Defendant acknowledges that in the event of a covered loss, "the insured can recover these expenses[.]" (Doc. #21, p. 31.) As discussed above, the Court finds that Plaintiffs have adequately stated a claim for a covered loss. Moreover, Plaintiffs allege that in complying with the Closure Orders and by suspending operations, they "incurred expenses in connection with reasonable steps to protect Covered Property." (Doc. #16, ¶ 250.) Consequently, the Court finds that Plaintiffs have adequately stated a claim for sue and labor coverage.

In sum, Defendant's motion to dismiss will be denied in its entirety. The Court emphasizes that Plaintiffs have merely pled enough facts to proceed with discovery. Discovery will shed light on the merits of Plaintiffs' allegations, including the nature and extent of COVID-19 on their premises. In addition, the Court emphasizes that all rulings herein are subject to further review following discovery. Subsequent case law in the COVID-19 context, construing similar insurance provisions, and under similar facts, may be persuasive. If warranted, Defendant may reassert its arguments at the summary judgment stage.

### IV. CONCLUSION

Accordingly, Defendant The Cincinnati Insurance Company's Motion to Dismiss (Doc. #20) is DENIED.

**IT IS SO ORDERED.**

**All Citations**

--- F.Supp.3d ----, 2020 WL 4692385

## Footnotes

| | |
|---|---|
| 1 | The Amended Complaint is 54 pages long and contains 253 separate allegations. This Order only discusses those allegations and issues necessary to resolve the pending motion. |
| 2 | All page numbers refer to the pagination automatically generated by CM/ECF. |
| 3 | Defendant notes that Kansas law may apply to one policy, but contends that Missouri and Kansas law are indistinguishable for purposes of the pending motion. (Doc. #21, p. 13 n.10.) Plaintiffs do not challenge this assertion. For purposes of this Order, the Court assumes that Missouri law applies. |
| 4 | *See also* Scott G. Johnson, "*What Constitutes Physical Loss or Damage in a Property Insurance Policy?*" 54 Tort Trial & Ins. Prac. L.J. 95, 96 (2019) ("[W]hen the insured property's structure is unaltered, at least to the naked eye ... [c]ourts have not uniformly interpreted the physical loss or damage requirement[.]") |
| 5 | Defendant also relies on *Gavrilides Mgmt. Co., LLC v. Michigan Ins. Co.*, Case No. 20-258-CB (Ingham County, Mich. July 1, 2020) (transcript regarding defendant's motion for summary disposition). (Doc. #37-2.) *Gavrilides* is distinguishable, in part, because the court recognized that "the complaint also states a[t] no time has Covid-19 entered the Soup Shop of the Bistro ... and in fact, states that it has never been present in either location." (Doc. #37-2, p. 21.) |
| 6 | Defendant argues that COVID-19 does not present a physical loss because "the virus either dies naturally in days, or it can be wiped away." (Doc. #21, pp. 24-25.) However, as stated, a physical loss has been adequately alleged insofar as the presence of COVID-19 and the Closure Orders prohibited or significantly restricted access to Plaintiffs' premises. *See Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2014 WL 6675934, at * 6 (D.N.J. Nov. 25, 2014) (recognizing that "courts considering non-structural property damage claims have found that buildings rendered uninhabitable by dangerous gases or bacteria suffered direct physical loss or damage"). Defendant also argues that Plaintiffs have failed to adequately allege that COVID-19 was actually present on their premises. Based on Plaintiffs' allegations, and because of COVID-19's wide-spread, this argument is also rejected. |
| 7 | Although it appears to be persuasive, the Court need not address Defendant's additional argument that the Amended Complaint fails to allege "physical damage." |