## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TJBC, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case No. 20-cv-815-DWD** |
| | ) | |
| THE CINCINNATI INSURANCE | ) | |
| COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

On August 27, 2020, Plaintiff TJBC, Inc. filed its Amended Complaint (Doc. 15) against Defendant, The Cincinnati Insurance Company, Inc., seeking relief related to Defendant's denial of Plaintiff's insurance claim resulting from alleged business damages sustained during the Covid-19 pandemic.  Plaintiff seeks a declaration that Defendant must provide coverage under the relevant insurance policy for losses due to governmental executive orders intended to stop the spread of Covid-19.  Plaintiff also asserts claims for breach of contract for failing to provide coverage, damages and attorneys' fees for vexatious refusal under 215 ILCS 5/15 and consumer fraud under 815 ILCS 505, along with a claim for common law fraud.

Now before the Court is Defendant's Motion to Dismiss (Doc. 24) and Memorandum in Support (Doc. 25).  Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Plaintiff Responded (Doc. 40) and Defendant Replied (Doc. 41).  On January 12, 2021, a remote hearing was held via Zoom

on Defendant's Motion to Dismiss (Doc. 24), and Plaintiff's pending Motion for Partial Summary Judgment (Doc. 35).   Having reviewed the briefing and arguments in this matter, and for the reasons below, Defendant's Motion to Dismiss (Doc. 24) is **GRANTED**.   Accordingly, the Court does not reach the merits of Plaintiff's Motion for Partial Summary Judgment (Doc. 35), which will be **DENIED as moot**.

## Background

Plaintiff owns and operates two food and beverage establishments in southern Illinois.  Starting in March 2020, Illinois Governor Pritzker issued a series of executive orders designed to curb the spread of the Covid-19 virus.  The orders closed "non-essential businesses" to the public and suspended indoor dining at restaurants and bars, although delivery, drive-through, and curbside pick-up options were permitted to continue.  The orders left Plaintiff unable to provide indoor dining to its customers for some time.  Plaintiff alleges that it was effectively forced to shut down for the duration of the crisis, resulting in substantial loss of revenue.  Plaintiff argues that its losses are covered under an insurance policy issued by Defendant for the period of August 6, 2017 to August 6, 2020 (Doc. 1-3)[1].  Plaintiff contends that coverage exists under the policy's general coverage and business income and extra expenses coverage provisions.  Plaintiff originally sought coverage under the policy's Crisis Event Coverage (Doc. 15), but

---

[1]The relevant Policy was attached as Exhibit 1 to Plaintiff's original complaint (Doc. 1-3) but omitted from Plaintiff's Amended Complaint (Doc. 15).  Nevertheless, the Court will still consider the Policy because it is central to the dispute, and both parties do not dispute its accuracy.  *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (When ruling on a motion to dismiss, the court "may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice.").

Plaintiff is no longer pursuing this claim.  *See Memorandum in Opposition to Defendant's Motion to Dismiss* (Doc. 40, at pp. 3, 12).

The policy's relevant provisions can be found in the Building and Personal Property Coverage Form and the Business Income (and Extra Expense) Coverage Form. The policy's general coverage provision states that Defendant "will pay for direct physical 'loss'[2] to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss."  (Doc. 1-3, at p. 37).  The policy defines Covered Causes of Loss as "RISKS OF DIRECT PHYSICAL LOSS unless the 'loss' is" otherwise excluded or limited (*Id.* at p. 39).

The Business Income coverage states, in relevant part:

We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration".  The "suspension" must be caused by direct physical "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss.

[. . .]

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration".  The "suspension" must be caused by direct physical "loss" to property at a "premises" which is described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The 'loss' must be caused by or result from a Covered Cause of Loss.

(Doc. 1-3 at pp. 50, 135).

The policy also provides Civil Authority coverage, which provides coverage for an "action of civil authority that prohibits access to the 'premises' due to direct physical

---

[2]"Loss" is defined as "accidental loss or damage."  (Doc. 1-3, at pp. 68, 142).

'loss' to property, other than at the 'premises', caused by or resulting from any Covered Cause of Loss. (*Id.* at pp. 51, 136).

## Legal Standard

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive dismissal, Plaintiff must state a claim that is 'plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Zablocki v. Merchants Credit Guide Co.*, 968 F.3d 620, 623 (7th Cir. 2020). A plausible claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court will accept all well-pleaded factual allegations as true and will construe all reasonable inferences in Plaintiff's favor. *Gibson*, 910 F.2d 1510 at 1520-21; *Zablocki*, 968 F.3d at 623. However, the Court need not accept statements of law or unsupported conclusory factual allegations as true. *Zablocki*, 968 F.3d at 623. Further, when plaintiff "relies on a document attached to the complaint, and does not deny its accuracy, the facts communicated by that document control over allegations to the contrary." *Id.*

## Discussion

The interpretation of an insurance policy is a matter of state law. *Windridge of Naperville Condominium Assoc. v. Philadelphia Indemnity Ins. Co.*, 932 F.3d 1035, 1039 (7th Cir. 2019). The parties agree that Illinois law controls this dispute. Accordingly, the proper construction of the policy is a question of law, and the Court's primary objective is to ascertain and give effect to the intentions of the parties as expressed in the policy.

4

*Windridge*, 932 F.3d at 1039 (citing *Hobbs v. Hartford Ins. Co. of the Midwest*, 214 Ill.2d 11 (Ill. 2005)).   In ascertaining the meaning of the policy's language, the Court "must construe the policy as a whole and 'take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract.'"   *Windridge*, 932 F.3d at 1039 (citing *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill. 2d 278 (Ill. 2001)).   When the policy language is unambiguous, it will be applied as written, unless it contravenes public policy.   *Windridge*, 932 F.3d at 1039; *Founders Ins. Co. v. Munoz*, 237 Ill.2d 424, 490 (Ill. 2010).   Policy provisions are not ambiguous solely because the parties disagree about its interpretations; rather an ambiguity exists when the policy language is "subject to more than one reasonable interpretation."   *Windridge*, 932 F.3d at 1039; *Founders*, 237 Ill.2d at 490.

Defendant argues that the Court should dismiss the Amended Complaint because Plaintiff has not, and cannot, allege "direct physical loss" to its property caused by Covid-19 or the Governor's executive orders.   "Direct physical loss" is a prerequisite to coverage under the policy, and its plain and ordinary meaning is central to whether the Amended Complaint survives the Defendant's Motion to Dismiss.   Defendant maintains that this language unambiguously requires some form of actual "tangible, material loss" or a "demonstrable, physical alteration" to the structure of Plaintiff's property.   Defendant reasons that the policy only indemnifies against loss or damage to *property*, and because an infectious disease like Covid-19 only damages *people* it cannot cause the requisite physical or material damage necessary to trigger coverage under the policy.   Thus,

5

because Plaintiff has not alleged that its property structure was physically altered by the Covid-19 virus, coverage is unavailable, and the complaint must be dismissed.

Indeed, Plaintiff's complaint does not allege that there has been any demonstrable physical alteration to its property or that Covid-19 has been on the surfaces of its property[3]. Instead, Plaintiff asserts that the language of the policy is more inclusive so to contemplate losses from any "reduction in usefulness, value or lifespan" of the property. Specifically, Plaintiff contends that "physical loss" does not require a material alteration to the physical structure of the property, but instead also includes coverage for "diminished value or functionality." In sum, Plaintiff argues that the policy language provides coverage for its income losses because the losses resulted from a reduction in the value of Plaintiff's business caused by a tangible and material substance (Covid-19) which can attach to its physical property, regardless of whether that substance can cause damage to the property itself. In support of its position, Plaintiff argues that *Advance Cable Co., LLC v. Cincinnati Ins. Co.*, 788 F.3d 743 (7th Cir. 2015) is controlling and requires a finding that "direct physical loss" includes losses sustained from the diminished value of Plaintiff's business during the time Plaintiff was unable to offer indoor dining to its customers.

---

[3] Plaintiff does allege that the "presence of COVID-19 in or around Plaintiff's business prevented it from operating beginning in March 2020." (Doc. 15, at ¶ 11). However, even in construing this factual allegation in Plaintiff's favor, it is not enough to infer that the virus was directly present at Plaintiff's property or on any of its surfaces.

In *Advance Cable*, the Seventh Circuit held that, under Wisconsin law, the phrase "direct physical loss" includes both hail damage that diminished the functionality of the insured's roof, and hail dents that were only cosmetic. *Advance Cable*, 788 F.3d at 747. The parties acknowledge that the policy language in *Advance Cable* is very similar to the relevant policy language here. However, the factual similarities appear to stop there, particularly in light of the Seventh Circuit's analysis distinguishing *intangible* damage from *tangible* damage. *Id.* at 746-747. The crux of the *Advance Cable* opinion concerns the question of whether cosmetic damage to a roof, i.e. damage that does not structurally impact the integrity of the roof, is covered as a "direct physical loss." *Id.* The Seventh Circuit answered in the affirmative, finding that the hailstorm "caused visible indentions to the surface of the roof" and "change[d] the physical characteristics of the roof." *Id.* at 747. Therefore, the policy's "direct physical loss" language was satisfied. *Id.* The Court also specifically emphasized that the cosmetic damage at issue in the case was not *intangible* damage, and further illuminated the distinction between *tangible* and *intangible* damage by distinguishing *Crestview Country Club Inc. v. St. Paul Guardian Ins. Co.*, 321 F.Supp.2d 260 (D. Mass. 2004). *Id.* at 746.

In *Crestview*, the Massachusetts district court held that *intangible* changes to the character of an insured's golf course following damage to a notable ash tree on the course, *did not* trigger insurance coverage as "direct physical loss or damage" despite the ash tree's replacement being covered under the relevant policy. *Id.* at 746. The Seventh Circuit noted that the *Crestview* case involved a coverage analysis of both *tangible* damage (the ash tree, which was covered), and *intangible* damage (the alteration in the golf

course's character, which was not covered), while the *Advance Cable* case only concerned tangible damage. *Id.* at 747 ("Advance is not asking for coverage of intangible damage."); *in accord*, *Welton Enterprises, Inc. v. Cincinnati Ins. Co.*, 131 F.Supp.3d 827, 834 (W.D. Wis. 2015) (explaining that in *Advance Cable*, the Seventh Circuit explicitly held that the policy's "physical" requirement was satisfied because the denting to the roof changed the physical characteristics of the roof, while also noting that its plaintiff was only seeking coverage for *tangible* damage).

This distinction between *tangible* and *intangible* damage is also vitally important here. Plaintiff alleges that Covid-19 (and the Governor's executive orders) necessarily diminished the functionality of its business because its business model was forcibly altered to prohibit indoor dining, thereby rendering the business less profitable in value. However, nothing in *Advance Cable* suggests that this alteration to the character of Plaintiff's business can be covered as a "direct physical loss" in the absence of some *tangible* damage or loss.

Indeed, in the Seventh Circuit's subsequent opinion, *Windridge of Naperville Condominium Assoc.*, 932 F.3d 1035 (7th Cir. 2019) (applying Illinois law), the Court, relied on its *Advance Cable* opinion to illustrate that the word "physical" (as used in the phrase "direct physical loss") "generally refers to tangible as opposed to intangible damage." *Windridge*, 932 F.3d at 1040. The Court continued:

> An alteration in appearance constitutes physical, tangible damage. The Illinois Supreme Court has explained that "the term 'physical injury' unambiguously connotes damage to tangible property causing an alteration in appearance, shape, color or in other material dimension." Similarly, we have acknowledged that "[t]he central meaning of the term

8

> [physical injury] as it is used in everyday English—the image it would
> conjure up in the mind of a person unschooled in the subtleties of insurance
> law—is of a harmful change in appearance, shape, composition, or some
> other physical dimension of the "injured person or thing."

*Id.* at f.n. 4 (citing *Travelers Insurance Co. v. Eljer Mfg., Inc.*, 197 Ill.2d 278 (Ill. 2001) and

*Eljer Mfg., Inc. v. Liberty Mut. Ins. Co.*, 972 F.2d 805, 808-09 (7th Cir. 1992) (Illinois law)); *in*

*accord Cincinnati Ins. Co. v. Taylor-Morley, Inc.*, 556 F.Supp.2d 908, 917 (S.D.Ill. 2008) (citing

*Eljer*, 197 Ill.2d at 312) ("We also conclude that under its plain and ordinary meaning, the

phrase 'physical injury' does not include intangible damage to property, such as

economic loss … [T]he diminution in value … does not constitute a *physical* injury.")

(emphasis in original).

　　　Accordingly, the Court finds that "direct physical loss" under the parties' policy

unambiguously requires some form of "tangible" loss or damage to the physical

dimension of Plaintiff's property.   Mere loss of use or diminishment in value of Plaintiff's

business without underlying tangible damage or loss to the business' property or

structure is not enough to trigger coverage under the policy.   This interpretation is

consistent with the policy's construction as a whole, which the Court is required to

consider.   *See Windridge*, 932 F.3d at 1039.   Indeed, to adopt Plaintiff's interpretation

would require the Court to assign peculiar meanings to other provisions in the policy,

rendering those provisions needlessly convoluted.

　　　For example, the policy defines "period of restoration" in relevant part as the

period of time that "b. Ends on the earlier of: (1) the date when the property at the

'premises' should be repaired, rebuilt or replaced . . . or (2) The date when business is

resumed at a new permanent location." (Doc. 1-3 at pp. 68, 142). Without underlying tangible damage or loss to the insured's property, no repair, rebuilding, replacement, or permanent location would outwardly be required, rendering this definition unclear at best. *In accord T & E Chicago LLC v. Cincinnati Ins. Co.*, 2020 WL 6801845, at *1, at *5 (N.D. Ill. Nov. 19, 2020) (the definition of "period of restoration" necessarily "implies a requirement of loss to property rather than loss of property."). Such strained construction here, and elsewhere in the policy, would likely offend the rules of construction and interpretation the Court is bound to abide.

This holding is likewise consistent with the decisions of other courts that have evaluated coverage for losses resulting from Covid-19 closure orders under similar policy provisions. *See Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, -- F.Supp.3d --, 2020 WL 7889047, at *1 (N.D. Ill. Dec. 22, 2020); *Sandy Point Dental P.C. v. Cincinnati Ins. Co.*, -- F.Supp.3d --, 2020 WL 5630465, at *1, *2 (N.D. Ill. Sept. 21, 2020) (collecting cases); *T & E Chicago*, 2020 WL 6801845, at *1. While some courts have reached different conclusions at this stage in the litigation, the Court finds it unnecessary to clutter this matter further by discussing other jurisdiction's approaches to different policies and claims. Illinois law provides a straightforward path for interpreting the policy here, and under the policy Plaintiff has failed to allege a "direct physical loss" necessary to trigger coverage.

In sum, because Covid-19 does not cause "tangible" loss or damage to the physical dimension of Plaintiff's property, and Plaintiff has not alleged that Covid-19 physically altered the appearance, or some material dimension of its property, Plaintiff has failed to allege a "direct physical loss" necessary to trigger coverage under the policy. Plaintiff's

arguments concerning civil authority coverage likewise fail.  The policy's civil authority coverage applies only if there is a Covered Cause of Loss, meaning risks of direct physical loss, to property, other than at the "premises."  (Doc. 1-3, at pp. 51, 136).  Just as Covid-19 did not cause direct physical loss to Plaintiff's property, the Amended Complaint did not allege that Covid-19 caused direct physical loss to other property.  Therefore, by the policy's own terms, the civil authority coverage does not apply.  Accordingly, Plaintiff has failed to plead the necessary preconditions to trigger coverage under the policy.

There being no coverage under the policy, the Court must dismiss Plaintiff's claim for declaratory judgment (Count I).  Further, because the remaining counts are predicated on an interpretation of Defendant's policy that the Court cannot accept, the Court also dismisses Plaintiff's counts for breach of contract (Count II), vexatious refusal (Count III) common law fraud (Count III [sic]), and consumer fraud (IV).

## CONCLUSION

For the above-stated reasons, Defendant's Motion to Dismiss (Doc. 24) is **GRANTED**.  Plaintiff's Motion for Partial Summary Judgment (Doc. 35) is **DENIED as moot**.  Plaintiff's Amended Complaint (Doc. 15) is hereby **DISMISSED**.  The Clerk of the Court is directed to enter judgement accordingly and close this case.

**SO ORDERED.**

Dated: January 25, 2021

_____
DAVID W. DUGAN
United States District Judge

11